UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GERALD WELLS<br><br>Plaintiff,<br><br>v.<br><br>WINDHAM PROFESSIONALS, INC.<br><br>Defendant. | CIVIL ACTION<br><br>COMPLAINT 1:17-cv-03006<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** Gerald Wells ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendant, Windham Professionals, Inc. ("Defendant," or "WPI") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227 and violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Southern District of Indiana and all of the events or omissions giving rise to the claims occurred within the Southern District of Indiana.

**PARTIES**

4. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Southern District of Indiana.

5. Plaintiff is a "consumer" as the term is defined by 15 U.S.C §1692a(3), and is a "person" as defined by 47 U.S.C. §153(39).

6. Defendant WPI is a Massachusetts corporation with its principal place of business located at 380 Main Street, Salem New Hampshire 03079. Defendant's registered agent in Indiana is Corporation Service Company located at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204. Defendant is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Indiana. [1]

**FACTS SUPPORTING CAUSE OF ACTION**

7. Plaintiff is a graduate of Lincoln Tech with an automotive technical degree. Plaintiff graduated with honors during his preparation for a successful career in his desired field.

8. While enrolled at Lincoln Tech, Plaintiff received numerous grants to pay for his tuition.

9. Plaintiff was advised by Lincoln Tech that these funds would never have to be repaid as they were not loans, but merely grants awarded to Plaintiff to satisfy his tuition.

10. After graduation, Plaintiff began to receive periodic calls to his cellular phone attempting to collect on student loans he borrowed while enrolled at Lincoln Tech, totaling no less than $11,000.

11. Plaintiff eventually paid this amount off and was relieved to know that he would no longer be subject to student loan repayments.

---

[1] Defendant states on its website that it assists "educational lending institutions in the loan repayment process." http://www.windhampros.com/services/services-overview/

12. In 2016, Plaintiff began to receive calls from WPI attempting to collect an alleged debt ("subject debt") claiming to be owed. However, based on the fact that Plaintiff satisfied all of his loans he borrowed while enrolled at Lincoln Tech, the subject debt stemmed from the grants Plaintiff received and were not owed by virtue of their true nature as grants.

13. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of the cellular telephone number ending in 2868. Plaintiff is and has always been financially responsible for this cellular telephone and its services.

14. Prior to the contacts, Plaintiff had no relationship with or knowledge of Defendant.

15. Plaintiff *never* provided his cellular telephone number to Defendant or otherwise expressly consented to Defendant's phone calls.[2]

16. On the first, or one of the first, calls Plaintiff answered from Defendant, Plaintiff reminded Defendant that the subject debt was not a debt at all. Rather, Plaintiff informed Defendant that the subject debt Defendant was attempting collect arose from grants Plaintiff received and was never liable to repay.

17. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular phone several times per day, on back to back days, on weekends, and as late into the evening after 10 p.m. in an attempt to collect the subject debt after Plaintiff revoked consent to be contacted on his cellular phone.

18. Notwithstanding Plaintiff's request that Defendant's unwanted calls cease, Defendant placed or caused to be placed no less than 700 calls to Plaintiff's cellular phone between May 2016 through the present day.

---

[2] Upon information and belief, Defendant obtained Plaintiff's cellular telephone number from a credit report in which Defendant accessed through a method known as "skip-tracing," whereby debt collectors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

19. During the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

20. Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

21. Plaintiff's demand that he no longer receive calls to his cellular phone in relation to the subject debt fell on deaf ears and Defendant continued its phone harassment campaign.

22. In addition to the egregious amount of calls Defendant placed to Plaintiff's cellular phone, Defendant also placed a number of calls to the cellular phone belonging to Plaintiff's girlfriend in attempt to harass Plaintiff and shame him into paying a debt he does not legally owe.

## DAMAGES

23. Defendant's harassing phone calls have disrupted Plaintiff's daily life and general well-being.

24. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time and causing risk of injury by interrupting and distracting Plaintiff, the increased risk of personal injury due to disturbance and distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

25. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

26. Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct, thus incurring costs and expenses.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

27. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

29. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

30. Based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff's cellular telephone.

31. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

32. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

33. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

34. As pled above, Defendant obtained Plaintiff's cellular number through "skip tracing," and thus never had any prior consent to place phone calls to Plaintiff's cellular phone. Any consent Defendant may have had to contact Plaintiff on his cellular was revoked verbally over the phone on at least one of the phone calls Plaintiff answered from Defendant.

35. Defendant violated the TCPA by placing no less than 700 harassing phone calls to Plaintiff's cellular phone from May 2016 through the present day, using an ATDS without his prior express consent.

36. Moreover, as plead above, Plaintiff demanded that all calls regarding the subject debt cease being placed to his cellular phone.

37. As pled above, Plaintiff was harmed by Defendant's unwanted and unsolicited calls to his cellular phone.

38. Upon information and belief, Defendant's corporate policy and procedures are structured as to continue to call individuals like Plaintiff, despite Plaintiff never having consented or permitted the calls, nor even having provided his cellular telephone number to Defendant.

39. Upon information and belief, Defendant has no system in place to document and archive whether it has prior consent to contact consumers on their cellular phones.

40. Upon information and belief, Defendant knew its collection practice were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

41. Defendant, through its agents, representatives, affiliates and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

42. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff GERALD WELLS requests that this Honorable Court:

   a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
   b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
   c. Award any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

43. Plaintiff restates and realleges paragraphs 1 through 26 as though fully set forth herein.

44. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

45. The subject debt that Defendant was attempting to collect arose primarily for family, personal or household purposes, and thus is an alleged "consumer debt" as defined by FDCPA §1692a(5).

46. Defendant is a "debt collector" as defined by §1692a(6) because its primary purpose is to collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

47. Defendant's telephone communications to Plaintiff were made in connection with a collection of the subject debt.

48. Defendant used telephones to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

49. Defendant violated 15 U.S.C. §§1692c(b), d, d(5), e(2), and f through its unlawful collection practices.

### a. Violations of FDCPA §1692c(b)

50. Defendant violated §1692c(b) by contacting Plaintiff's girlfriend and mother in connection with the subject debt. Defendant was precluded from contacting Plaintiff's girlfriend and mother as Defendant was not authorized to take such an action.

### b. Violations of FDCPA §1692d

51. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by calling Plaintiff's cellular phone seeking to collect the subject debt. Moreover, Defendant continued placing the calls after Plaintiff demanded that the calls in relation to the subject debt cease.

52. Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff. Specifically, Defendant placed or caused to be placed no less than 700 harassing phone calls to Plaintiff's cellular phone from May 2016 through the present day to Plaintiff's cellular phone, using an ATDS without his prior consent.

### c. Violations of FDCPA §1692e

53. Defendant violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the alleged subject debt. The alleged debt was never owed when Defendant demanded payment. Plaintiff did not have any legal obligation to pay the alleged subject debt that Plaintiff did not accrue.

### d. Violation of FDCPA §1692f

54. Defendant violated §1692f in that Defendant used unfair and unconscionable means to collect the subject debt by placing phone calls to Plaintiff's cellular phone attempting to dragoon Plaintiff into paying the subject debt.

55. Upon information and belief, Defendant systematically attempts to collect debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

56. As stated above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff GERALD WELLS requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: August 30, 2017

**Respectfully Submitted,**

/s/ Marwan R. Daher
Marwan R. Daher, Esq. ARDC#6325465
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 South Highland Ave.
Lombard, IL 60148
Phone: (630) 575-8181, ext. 109
mdaher@sulaimanlaw.com

/s/ Omar T. Sulaiman
Omar T. Sulaiman, Esq. ARDC#6322837
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 South Highland Ave.
Lombard, IL 60148
Phone: (630) 575-8181, ext. 108
osulaiman@sulaimanlaw.com